THE STATE OF DELAWARE, Upon the relation of Joseph Donald Craven, Attorney-General, Appellant, v. SIGMUND SCHORR, FRED HEINHOLD, CARL J. SCOTT, LESLIE FORD, WOODROW WILSON STANLEY, WILLIAM MCCLAFFERTY, MARTIN DEVINE, JOSEPH GRABOWSKI, OSCAR SEWELL, WILLIAM SAVERY, GEORGE SYLVESTER, purporting to constitute the Department of Elections for New Castle County, Appellees.

THE STATE OF DELAWARE, upon the relation of Joseph Donald Craven, Attorney-General, Appellant, v. JOHN M. CONWAY,

Brinton T. Holloway, I. Leroy Smith, Burton S. Heal and J. Edward Truitt, purporting to constitute the Delaware Beverage Control Commission, Appellees.

The State of Delaware, upon the relation of Joseph Donald Craven, Attorney-General, Appellant, v. Benjamin F. Shaw, II, J. Gordon Smith, Francis Gebhart, Thurman Adams, Carey Sapp, purporting to constitute the State Highway Department of the State of Delaware, and Robert D. Thompson, Edward Kelly, Thurman Adams, Samuel J. Fox and Benjamin Ableman, purporting to be members of the State Highway Department of the State of Delaware as allegedly created by Senate Bill No. 524, Appellees.

(*April* 11, 1957.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Edmund N. Carpenter, II, Januar D. Bove, Jr.,* and *Clarence W. Taylor* for appellants.

*S. Samuel Arsht, George Gray Thouron* and *Ernest S. Wilson, Jr.,* and *James M. Tunnell, Jr.,* for appellees.

Supreme Court of the State of Delaware, Nos. 46, 47 and 48, 1956.

SOUTHERLAND, C. J.:

These are three actions of *quo warranto* to try the title to office of certain members of three State Departments or Commissions—the State Highway Department, the Department of Elections for New Castle County, and the Delaware Liquor Commission.

The attack in all three cases is based upon the contention that the three statutes creating such offices are (in whole or in part) unconstitutional for various reasons.

On cross motions for summary judgment the trial court rejected all of the relator's contentions, sustained the constitutionality of the statutes, granted defendants' motions, and dismissed the actions. Relator appeals.

Although the principal questions of law are common to all three cases, it will be convenient to consider each case separately.

## I. The State Highway Department.

This case, like the other two cases, involves two acts of the 1955 General Assembly. We shall call them "the First Highway Act" and "the Second Highway Act".

Prior to June 9, 1955, the State Highway Department ("the old Department") consisted of seven members, appointed by the Governor for fixed terms. See 17 *Del. C.* § 111, before amendments. On that date the First Highway Act was passed over the Governor's veto. It purported to abolish the existing Department and establish a new State Highway Department ("the first new Department") to which "[a]ll of the powers, duties and property" of the former Department were transferred. The new Department consisted of five members, all of whom were named in the act. See 50 *Del. L.* c. 268. 17 *Del. C.* § 111 note. The effect of the act was to legislate out of office certain of the members of the old Department.

This act, as well as the two acts relating to the other departments referred to, were attacked as unconstitutional in proceedings filed in the Superior Court after their enactment. Before a decision was handed down, the General Assembly on December 5, 1955, passed another series of acts relating to the same departments. 50 *Del. Laws* c. 548, *Del. C.* §§ 111 and note, 114, 116, 118, 151. The Second Highway Act (1) repealed the act of June 9, 1955, and abolished the first new Department; (2) "reestablished and continued" the old Department with all of its duties and powers; (3) enlarged the old Department to twelve members; (4) continued in office the members of the old Department until the expiration of their respective terms; and

(5) named the five persons to hold the additional newly-created offices for terms expiring on the dates fixed in the act.

This act, under which defendants now claim their offices, is attacked as unconstitutional on various grounds.

(1) *Colorable Legislation.* It is asserted that the act was not passed for the bona fide purpose of reorganizing the Department, but for political purposes only, *i.e.*, to wrest control of the Department from the Republican Party, and confer control upon the Democratic Party; that such an act is an exercise of arbitrary power and is void.

But where is there to be found in our constitution any prohibition against the passage of legislation for political motives? Relator's argument ignores the fundamental principle that "absent a constitutional inhibition, the power of the legislature as the repository of the legislative power with its broad and ample sweep, has full and unrestrained authority to exercise its discretion in any manner it sees fit in its wisdom or even folly to adopt". *Collison v. State ex rel. Green,* 39 *Del.* 460, 2 *A.* 2d 97, 101.

There is no provision in our Constitution that prevents a political party dominating the General Assembly from passing legislation for political motives. It may certainly be doubted that such a provision exists in any State. And no court may properly inquire into such a matter for the members of the General Assembly are responsible in this respect to their constituents only—not to the courts. For abuses of political power by the legislature *acting within its authority,* the only redress is action at the polls. Our courts have repeatedly said so. See *State ex rel. McVey v. Burris,* 4 *Penn.* 3, 49 *A.* 930; *State v. Grier,* 4 *Boyce* 322, 88 *A.* 579; *Collison v. State, supra.*

For us to undertake the task of pronouncing a moral judgment upon the motives of members of the General Assembly in enacting legislation would be a presumptuous assertion of a power that we do not possess.

To relator's denunciation of this act as "ripper legislation", the answer of the Court must be, as was said in the *Collison* case, that we are fully aware that in the judgment of many persons such legislation is highly unwise.

"But it is the province of the legislature and not of the courts to pass upon matters of policy. The legislative hand is free except as the constitution restrains; and courts are bound by a most solemn sense of responsibility to sustain the legislative will in the appropriate field of its exercise, even though in the opinion of the judges as individuals the legislature had acted in an unwise manner." Per Wolcott, Channcellor, in *Collison v. State ex rel. Green*, 39 *Del.* 486, 2 *A.* 2d 97, 119 *A. L. R.* 1422.

In support of his argument that this legislation is void because "colorable", relator cites many authorities dealing with attempts to legislate persons out of office by the device of abolishing the office, recreating it, and conferring its powers upon another person. See 67 *C. J. S., Officer,* § 10, p. 122; and cases collected in the note at 172 *A. L. R.* 1366ff. It may be conceded at once that the legislature may not, by such a device, circumvent a constitutional prohibition protecting an officer from arbitrary removal. As we shall see later, this is a valid criticism of the first series of acts in these cases. But the Second Highway Act, re-establishing the old Department, does not seek to abolish any office or to legislate anyone out of office.

We are of opinion that the act is not void as "colorable legislation".

(2) *Defective Title.* It is said that the title of the Second Highway Act fails to comply with the constitutional requirement that no bill shall embrace more than one subject which shall be expressed in its title. Art. II, § 16, *Del. C. Ann. Const.*

The title is as follows:

"An act pertaining to the State Highway Department and providing for its reorganization, composition and membership,

for the ratification of the acts of the State Highway Department created by Chapter 268 of Volume 50 *Laws of Delaware*, repealing said Chapter 268 of Volume 50 *Laws of Delaware* and abolishing the offices therein created, and amending Chapter 1 of Title 17 of the *Delaware Code*".

It is said that the title does not disclose (a) that specified individuals are appointed to membership in the Department, or (b) that the bill reestablishes and continues the old Highway Department with all its powers and duties. The title gives notice that it concerns the "reorganization, composition and membership" of the Department. This is sufficient to put any one on notice of the wide scope of the bill. The title need not be an index of the details of the bill, *State ex rel. Morford v. Emerson*, 40 *Del.* 328, 344, 10 *A.* 2d 515; *Klein v. National Pressure Cooker Co.*, 31 *Del. Ch.* 459, 64 *A.* 2d 529, and it is not defective because it does not spell out the two items relator refers to. See *Fouracre v. White*, 30 *Del.* 25, 102 *A.* 186; *State ex rel. Morford v. Emerson*, 40 *Del.* 233, 246, 8 *A.* 2d 154.

As for the subject, it is clear that the bill deals with one subject only—the reorganization of the Highway Department.

The Second Highway Act is not invalid under art. II, § 16 of our Constitution.

■ (3) *Legislative Journals.* It is said that the act was not validly passed because no legally sufficient legislative journals were kept, in violation of art. III, § 18, of the *Delaware Constitution*. This section requires that the Governor's objections to a bill be entered at large upon the journal, together with the names of members voting for and against the bill. This was done. The objection is that the journal consists of loose-leaf records, and is not a "permanent record". As the court below pointed out, our Constitution does not prescribe any particular form or manner of keeping the journals. Some other method might be thought preferable, but that is a matter for the decision of the respective houses. And it is asserted by defendants, and apparently not denied, that the method in use when the

Second Highway Act was passed is the method that has been used for many years. It can scarcely be seriously contended that no valid legislation has been enacted during this time.

*Rash v. Allen*, 1 *Boyce* 444, 76 *A.* 370, is cited, but is not in point. That case concerned a failure to enter the yeas and nays upon the journal. The court adopted the "journal entry doctrine", and held the statute invalid. We had supposed that the amendment to art. III, § 18, which was adopted immediately after the decision in the *Rash* case, had effectively eliminated the jounral entry doctrine in this State. See 26 *Del. L.* c 1 and 27 *Del. L.* c 1, *Const.* art. 2, § 10. If so, we may not go back of the enrolled bill, and any contention founded upon the supposed lack of proper journals would appear irrelevant. But this particular point is not fully argued on the briefs and we express no opinion upon it.

We hold that the records kept by the respective houses sufficiently complied with the provisions of art. III, § 18.

■ (4) *Usurpation of Executive Functions.* It is contended that the Second Highway Act is unconstitutional as a usurpation by the legislature of the executive functions of government. The legislature, it is admitted, may create new offices; but the appointment to any such office, it is said, is an executive function and cannot be made by the legislature.

This contention is based upon the familiar principle of the separation of powers, adopted *in toto* by many of the American states. Thus, the *Delaware Constitution* provides that the legislative power shall be vested in a General Assembly, art II, § 1; the supreme executive powers shall be vested in a Governor, art. III, § 1; and that the judicial powers shall be vested in the courts, art. IV, § 1.

But Delaware has never adhered strictly to the principle of the separation of powers. *Opinion of the Justices*, 47 *Del.* 117, 88 *A.* 2d 128. In this respect our constitutional law differs from that of many other states. One striking departure from the sep-

aration principle is found in our constitutional limitation of the Chief Executive's power of appointment. Art. III, § 9 defines the Governor's powers in respect of appointment as follows:

"He shall have power, unless herein otherwise provided, to appoint, by and with the consent of a majority of all the members elected to the Senate, *such officers as he is or may be authorized by this Constitution or by law to appoint.*" [Italics supplied]

The difference between this language and that of the comparable section of the Constitution of 1831, art. III, § 8, *Del. C. Ann.,* is marked. That Constitution provided:

"He shall appoint all officers whose offices are established by this Constitution, or shall be established by law, and whose appointments are not herein otherwise provided for; * * *."

Under our present Constitution the Governor of Delaware has no vested constitutional power to appoint to statutory offices. The decision to grant or withhold from him such power rests with the General Assembly. The legislature may confer that power upon the executive, or may confer it even upon the judiciary (lamentably, it has frequently done so), or may exercise it itself, because, except as curtailed by the Constitution, its power is unlimited. See authorities first above cited; and *State ex rel. Morford v. Emerson,* 40 *Del.* 233, 8 *A.* 2d 154, 158; *Id.,* 40 *Del.* 328, 344, 10 *A.* 2d 515; affirmed *per curiam* 40 *Del.* 496, 14 *A.* 2d 378.

The *Emerson* case is decisive of the matter. The facts of that case are almost identical with those of the case at bar. In 1939 the General Assembly enacted a statute increasing the membership of the Highway Department from five to seven, removed the Governor as an *ex officio* member, and named three additional members of the Department. In suits to try the title to the offices filled by the legislature, it was contended that the legislature had no power to appoint them—the same contention as is made here. The Superior Court reviewed the

historical development of the Governor's appointing power in Delaware, and held that the right of the Governor to appoint constitutional officers is the exact measure of his authority to appoint statutory officers, *i.e.*, only such officers "as he is or may be authorized * * * to appoint". There is no inherent power in the Governor to make appointments. The court concluded:

"We see nothing in the Constitution which prevents the Legislature from creating a statutory Commission or Board and naming the members thereof. If that were true, then we see no reason why an existing statutory Board may not be amended by increasing the membership, such new members being designated in the Amendatory Act."

The Superior Court, in the second *Emerson* case, 40 *Del.* 328, 344, 10 *A.* 2d 515, adhered to these views. Its decision was affirmed by the Supreme Court in a *per curiam* opinion. 40 *Del.* 496, 14 *A.* 2d 378. It was again approved by the Supreme Court in *State ex rel. James v. Schorr*, 45 *Del.* 18, 65 *A.* 2d 810.

We can add nothing to Judge Rodney's review in the first *Emerson* case of the historical background of our constitutional provision respecting the Governor's appointing power or to his discussion of its scope and meaning. The General Assembly may constitutionally do just what it did in the Second Highway Act, *viz.*: increase the membership and fill the newly-created offices itself.

This power flows directly from the provisions of the Constitution of 1897, which represented a deliberate decision of the Constitutional Convention to curb the Governor's appointing power. See the opinion of Judge Spruance in *State v. Churchman*, 3 *Penn.* 361, 369, 51 *A.* 49 and the language of the 1831 Constitution quoted above. That decision of the Convention opened the way to such acts as the Highway Acts of 1939 and 1955. If, as many think, the results are unfortunate, the people may change the Constitution; the Court cannot do so.

Defendants ask us to overrule the *Emerson* case, but, as above stated, we are of opinion that it was correctly decided,

and we reaffirm it. It is a conclusive answer to relator's contentions under this heading.

 (5) Some subsidiary points are made with respect to the constitutionality of sub-sections (c) and (d) of § 111 of the Second Highway Act. These sub-sections provide that upon expiration of the term of any member the Governor shall appoint a successor by and with the consent of the Senate; in case of a vacancy the remaining members of the Department shall fill it. It is contended that the Governor's appointing power cannot be suspended and then reinstated. Why not? If it can be withheld altogether, as is settled law, it may be withheld partially. The court below so held, and we agree.

It is also said (1) that future appointments by the Governor may not be conditioned upon the consent of the Senate, since by the constitution confirmation is required only when the salary and emoluments of the office exceed $500 annually, art. III, § 9; and (2) that the provision for filling vacancies is an infringement of the Governor's power to fill vacancies by recess appointments. Art. III, § 9.

These questions are not properly raised. They do not affect the title to office of any of the defendants, which is the sole issue raised by the proceeding in *quo warranto*. The validity of future appointments is not before the Court in this case, and we decline to decide constitutional questions that have no bearing on the issue.

6. Some other points should be briefly noticed.

 (a) It is said that the increase in membership of the Department, and the change of political control, amounted to depriving the members of the old Department of their offices, since their vote is diluted and they had to serve under a new chairman. No constitutional principle is cited in support of this contention. None could be .

(b) It is contended that the Second Highway Act illegally removed from office two members appointed by the First High-

way Act. This contention seems to assume the validity of the First Highway Act, elsewhere assailed as unconstitutional. As will be seen hereafter, the First Highway Act like the other acts of the first series, is invalid; and the legislative repeal was in effect but a recognition of its invalidity.

(c) There is some contention to the effect that the Second Highway Act constituted an attempt to usurp the jurisdiction of the courts because at the time of its passage a case was pending attacking the validity of the First Highway Act. This contention we have difficulty in understanding. A law is attacked as unconstitutional; it is unconstitutional; the legislature repeals it. What is wrong with that?

(d) The provision of the Second Highway Act ratifying the acts of the first new Department is assailed as an unconstitutional attempt to validate an unconstitutional act. If we assume that this is so, how is the title of defendants to their offices affected? The provision is obviously severable; if it were stricken down, relator could not succeed.

We have examined all the arguments and contentions of the relator with respect to the Second Highway Act. It is our conclusion that there is no substance in any of them. The Second Highway Act is constitutional, so far as concerns the present issues.

II. The Department of Elections for New Castle County.

As in the Highway Department case, two acts are involved. The First Election Act was passed May 18, 1955, 50 *Del. L.* c. 155, 15 *Del. C.* § 103, and note. It abolished the pre-existing Department of Elections for New Castle County with nine members (see 15 *Del. C.* § 103 before amendments); and attempted to create a new Department of eleven members, naming all of the eleven in the act. The effect, as in the Highway case, was to remove from office certain of the incumbent officers.

By the Second Election Act, December 5, 1955, 50 *Del. L.* c. 545, 15 *Del. C.* §§ 103 and note, 109, the First Election Act

was repealed; the old Board was re-established; the membership was increased to seventeen members; the members theretofore appointed and serving unexpired terms were continued in office; and seven additional members were appointed in the act.

The Second Election Act is assailed on much the same grounds as those urged in the Highway Department case. The conclusions set forth in that case govern here so far as applicable. Two points must be dealt with specially.

 1. *Title.* The title is as follows:

"An act to repeal the act of May 18, 1955, entitled 'An act amending Chapter 1, Title 15, of the Delaware Code by abolishing the present Department of Elections for New Castle County and creating a new Department of Elections for New Castle County', which act was denominated Senate Bill No. 255, as amended; to ratify the acts of the Board of Elections for New Castle County appointed pursuant to the act of May 18, 1955, aforesaid and to amend Chapter 1, Title 15 of the Delaware Code by increasing the membership of the Department of Elections for New Castle County and appointing seven persons to fill the vacancies thereby created and presently existing and to further amend said Chapter 1, Title 15 of the Delaware Code by changing the organization date of the department."

This title is challenged on the same grounds as those urged against the title of the Second Highway Act. The reasons and authorities already set forth in rejecting the contention in the Highway case are applicable to the Election case. The title is sufficient.

 2. *Extension of Terms of Office.* This is a point not raised by the Highway case. The facts are these:

Sigmund Schorr, one of the defendants, was a member of the old Department of Elections. He had been appointed for a term expiring August 10, 1955. By the First Election Act, passed May 18, he was appointed a member for a term extending to

July 1, 1961. By the Second Election Act he was appointed for a term extending until October 1, 1961.

Six other defendants (Heinhold, Scott, Ford, McClafferty, Devine, and Grabowski), who were not members of the Old Department, were appointed to the first New Department by the First Election Act for terms extending to July 1, 1961. By the Second Election Act they were appointed for terms extending until October 1, 1961.

Relator says that the effect of these acts was to extend the term of office of Schorr twice, and of each of the others once, in violation of art. XV, Sec. 4, of our Constitution. That section provides:

"No law shall extend the term of any public officer or diminish his salary or emoluments after his election or appointment."

This argument seems to assume the validity of the First Election Law, for if that law were void *in toto*, as relator elsewhere asserts, there would be no valid term of office to be extended by the second law. Defendants reply that there was no extension of term, because the offices created under the First Election Law were extinguished by the second law. This is an argument of doubtful validity. If a valid office was created by the First Election Law, and if (in substance though not in form) the Second Election Law extended the term of that office, why would there not be a violation of the constitutional prohibition against extension?

Defendants say that the prohibition against extending the term of any public officer applies only to constitutional officers, citing *State ex rel. Green v. Isaacs*, 36 *Del.* 110, 171 *A.* 627. This is a decision of the Superior Court in 1934 which appears to adopt that view. But the correctness of the holding in this case is highly doubtful, to say the least, and we shall assume here that the provisions of art. XV, Sec. 4, apply to statutory offices with fixed terms.

But we do not think that any office was validly created by the First Election Act. We think it beyond doubt that the First Election Law was unconstitutional and void. Under the guise of abolishing and immediately re-establishing the Department of Elections and naming the personnel of the re-established Department the General Assembly sought to legislate out of office certain of the members of the Old Department, that is, to remove them from office.

Now each of these officers held office for a fixed term, of either four or six years. 15 *Del. C.* § 103. It was held in *State ex rel. Green v. Collison,* 39 *Del.* 245, 197 *A.* 836, that the provisions of our Constitution specifying the methods of removing an incumbent from office are, as concerns an officer holding office for a fixed term, exclusive. They preclude arbitrary removal from office. These constitutional grounds for removal are: (1) by the Governor, upon the address of two-thirds of all the members elected to each House, art III, § 13; (2) by impeachment by the House and trial by the Senate, art. VI, § 2; and (3) by the Governor, upon conviction of misbehavior in office or any infamous crime, art XV, § 6.

The historical background of these provisions, including the *Debates of the Constitutional Convention of* 1897, is set forth at length in the opinion of the majority of the court in the *Collison* case, and the legal principles and precedents are exhaustively discussed. Referring to the reasons that prompted the framers of our Constitution to limit the power of removal from office, Chief Justice Layton said:

"For these weighty reasons, based upon experience, and with deliberation, certain causes of removal and certain methods of removal were provided as the sole causes and the sole methods. Removal by impeachment if for cause. Removal upon the address of the General Assembly is predicated on cause. Conviction of misbehavior in office or of infamous crime is cause. Every provision in the organic law with respect to removal from office points straight at cause, and nothing except cause. If an

officer behaves himself well while in office he gives no cause for his removal." 39 *Del.* 264-265, 197 *A.* 845.

The dissent in the Superior Court, and the reversal in the Supreme Court, 39 Del. 460, 2 *A. L. R.* 2d 97, 119 *A. L. R.* 1422, were on other grounds, *i.e.,* that the term of the office involved in that case was not fixed and was an office held at the will of the Governor. The majority opinion below, we think, correctly states the law with respect to arbitrary removals from office, whether attempted by the Governor, or by the General Assembly, or by any other State authority.

Let us apply the rule to this case. We see at once that by the transparent device of abolishing the old Department and instantly re-creating it (so that in truth it never was abolished), and naming the members of this supposed new Department, the General Assembly has attempted to do indirectly that which it may not do directly—remove from office, without cause, officers holding offices for fixed terms. The effect of the act is exactly the same as if the General Assembly were to declare by legislative act: "John Doe is hereby removed from his office; Richard Roe is appointed in his place."

As we have above noted, the power of the General Assembly is unlimited save as curbed by constitutional inhibition; but if a constitutional prohibition exists, as it does here, it may not be avoided by going through meaningless forms.

In our opinion the First Election Act is unconstitutional and void. Hence there exists no problem of extension of term, for the appointments under the first act were wholly ineffective.

This holding of unconstitutionality applies also to the First Highway Act, which undertook to remove certain of the members of the Department, and likewise to the First Liquor Commission Act, as will be seen hereafter.

3. *Death Occurring Prior to Passage of Act.* Some point is sought to be made of the fact that one of the appointees named in the Second Election Act died before the effective date of the

act. How this could avail to impair the title to office of the other appointees we fail to understand.

In our opinion the Second Election Act is constitutional.

### III. Delaware Liquor Commission.

As in the two preceding cases, two acts of the General Assembly are involved. Prior to June 30, 1955, the Delaware Liquor Commission consisted of one member appointed for the fixed term of five years. On that date the First Liquor Act was passed. 50 *Del. L.* c. 393, 4 *Del. C.* § 301, and note.

It purported to abolish the existing commission, immediately re-created it under a slightly different name, provided for five members, and named the five members of the commission. The Commissioner in office was not named as a member.

On December 5, 1955, the Second Liquor Act was passed. 50 *Del. L.* c. 547, 4 *Del. C.* §§ 301 and note, 304. Like the companion acts heretofore discussed, it repealed the First Liquor Act, re-established the old commission, validated acts under the First Liquor Act, increased the membership of the old commission to five, continued the incumbent in office, and named the four members whose offices were created by the act.

These acts are assailed as unconstitutional on substantially the same grounds as are urged against the acts already considered. The only ground needing separate consideration is the attack on the title of the Second Act.

The title reads:

"An act pertaining to alcoholic liquors and providing for the reorganization, composition, membership and powers of the commission called the 'Delaware Alcoholic Beverage Control Commission', for the ratification of the acts of the commission created by Chapter 393 of Volume 50 Laws of Delaware, repealing said Chapter 393 of Volume 50 Laws of Delaware and abolishing the offices therein created, and amending Chapter 3 of Title 4 of the Delaware Code." 50 *Del. L.* c. 547.

The title is assailed as insufficient, on the same grounds (*mutatis mutandis*) as urged against the acts already considered; and it is again said that the act deals with more than one subject.

Upon the principles announced and the authorities cited in the case of the Highway Department, the objections are rejected.

### Conclusion.

We have carefully considered the many and varied objections made to the second series of acts. We are satisfied that, so far as concerns the issues before us, none of these objections has any sound basis in any constitutional limitation on the power of the General Assembly. The serious breach of constitutional law found in the first series of acts was completely cured by the second series of acts. This second series was obviously modeled on the decision of this Court in the *Emerson* case. Indeed, it was so stated at the argument. That case dealt with the Highway Department Acts of 1939, which set the precedent for the acts of 1955. Since, in our opinion, the *Emerson* case was correctly decided, the acts here attacked must be sustained.

The judgments of the Superior Court are affirmed.