84 A.2d 598 (1951)
In re AUDITORIUM, Inc.
In re 704 WEST ELEVENTH ST., WILMINGTON.
Civil Action No. 877, 1950.
Superior Court of Delaware, New Castle.
October 30, 1951.
David F. Anderson, of Berl, Potter & Anderson, Wilmington, for petitioner.
Herbert B. Warburton, Asst. City Sol., Wilmington, for Board of Adjustment of Mayor and Council of Wilmington.
Heard by RICHARDS, P. J.
*601 RICHARDS, President Judge.
It is admitted that the building located at 704 West Eleventh Street owned by The Auditorium, Inc., the petitioner, was there before the Act of the Legislature approved April 26, 1934, 39 Del.Laws, c. 22, providing for the adoption of zoning ordinances by legislative bodies of cities and incorporated towns in this State, and before the adoption of the building zone ordinances by the Mayor and Council of the City of Wilmington.
This being the case, under the provisions of Chapter 1699, Section 2 of the building zone ordinance, the owner of the building was not required to change its then existing use regardless of whether it conformed to the provisions of said ordinance.
The petitioner contends that the building zone ordinance is illegal and void as applied to the premises in question, because there is no building zone map accompanying the ordinance providing for the establishment of the bundaries of zoning districts, on which said zoning districts are shown, as required by Section 1 of said ordinance; and for the further reason that such building zone map is not kept in the custody of the clerk of council pursuant to the provisions of an ordinance of the Mayor and Council of Wilmington.
Mr. Willitts, city clerk and clerk of City Council, testified before me that there is a printed pamphlet of the building zone ordinance of the city of Wilmington as passed by the City Council, accompanied by a map which is declared to be a part of said ordinance. He further testified that this map is kept in the office of Mr. Fidance, the building inspector, that it is the only map he knows of and the one used by the building inspector.
Mr. Fidance testified that when he became building inspector for the city of Wilmington in 1934 a map which was considered the original building zone map of the city was in the office and has remained there since that time; that this map is used to determine the boundaries of the various zoning districts of the city; that in the square in which the building in question is located there were three different districts, a business B district, an apartment district and a residence C district; and that the entire block is in a residence district with the exception of the corner at Eleventh and Madison Streets.
Mr. Koester testified that he was chief engineer of the Street and Sewer Department and in that capacity served as a member of the Board of Adjustment for Zoning Appeals and was secretary of said Board. He further testified that in 1936 another map was prepared by the Street and Sewer Department which has been recognized since that time as the official map of the city of Wilmington and is the one used by the Board of Adjustment for Zoning Appeals.
It appears that the custody of the building zone map on which the zoning districts are shown, to be used in the enforcement of the building zone ordinance has been uncertain, but there seems to be no doubt that there is such a map which is referred to by both the building inspector and the Board of Adjustment in determining the boundaries of zoning districts. I am, therefore, unable to find that the building zone ordinance is illegal and void because of the failure to provide such a map.
The further contention is made that the boundaries established by the Mayor and Council of Wilmington for zoning districts are too vague, indefinite and uncertain to be applied to the petitioner's premises. It must be admitted that the boundaries established for the various zoning districts could be more clearly defined, *602 and that the building inspector and Board of Adjustment for Zoning Appeals could adopt a more certain method for determining where said boundaries are located, but it cannot be said that they are so vague that the petitioner's rights cannot be determined and that the ordinance cannot be enforced. Both Mr. Fidance and Mr. Koester testified that there was a definite rule which was used in determining the boundaries for the districts which was applied in this case.
I am convinced from the evidence before me that The Auditorium located at 704 West Eleventh Street is in either a residence or apartment district. This appears from the testimony of both Mr. Fidance and Mr. Koester and is supported by the order of the Board of Adjustment made on August 23, 1940. Paragraph 1700, Section 3, of the ordinance which specifies the manner in which buildings can be used or designed or arranged to be used in residence or apartment districts does not include an amusement center where athletic exhibitions would be held as is contemplated by the petitioner.
As stated above, the building at 704 West Eleventh Street owned by the Auditorium, Inc., the petitioner, was erected long before the zoning ordinance was adopted and was used for many years for just such purposes as Mr. Ward proposes to use it. It was permitted to be used for the same purposes after the adoption of the zoning ordinance notwithstanding the fact that such use was not permitted in the district in which it was located, because said ordinance does not require a change in the then existing use of any building. If, however, any existing nonconforming use of a building is abandoned for more than two years, it cannot be resumed. Special permission of the Board of Adjustment is necessary if the nonconforming use of an enterprise is extended beyond the limits of the present lot and a non-conforming building, once made conforming, cannot be changed back so as to be non-conforming again.
There is no doubt that the owners of the building in question could have continued to use it in the same manner and for the same purpose that it was used at the time the zoning ordinance was adopted. This was not done, however, but on August 28, 1940, upon application of the owner permission was granted by the Board of Adjustment for the building to be used for a furniture store and furniture exhibitions, and it has continued to be used for that purpose since that time. This order of the Board of Adjustment changed the non-conforming use of the premises to an entirely different non-conforming use, and at the same time, reserved the right to use the building for wrestling and boxing bouts as well as for furniture store and furniture exhibitions. Under my interpretation of the ordinance, the Board of Adjustment for Zoning Appeals had no right to grant the owner of the building permission to change the non-conforming use for which it was used at the time the ordinance was adopted to another non-conforming use, or to allow the owners to reserve the right to use the building for the original non-conforming use.
The Auditorium in question has not been used for athletic events since 1940 and to permit it to be used for that purpose now would be in direct conflict with that portion of the ordinance prohibiting the resumption of the non-conforming use of a building after it has been abandoned for more than two years.
No one knows better than the petitioner that the purpose for which The Auditorium was originally used was abandoned more than two years ago and that it has not been used for that purpose for more than ten years. For this reason, it is not in a position to say that the Board of Adjustment imposed an unnecessary hardship upon it by refusing to allow it to use the building for the purpose for which it now desires to allow it to be used.
The real design and purpose of zoning ordinances is to promote the general welfare. The principal reason for restricting the use of property in certain localities is to make the locality a better place in which to live, to protect the value *603 of the property and provide for the health and safety of those who live there.
The purpose for which The Auditorium was used at the time it was erected, and for many years thereafter, may not have been objectionable then because of the condition of the neighborhood at that time, which I understand from the evidence before me was not built up as it is today. There has been a great change in this condition, however, the neighborhood now being almost entirely residential, and it seems clear that to permit the building to again be used as it was orginally used would be attended by many objectionable conditions.
Under the provisions of Paragraph 1711, Section 14, of the ordinance, the Board of Adjustment is authorized, in cases where unnecessary hardship would result to interested parties, to allow a variance from the terms of said ordinance, but it must not lose sight of the general purpose and intent of the ordinance, or fail to guard the public interest at all times.
The ruling of the Board of Adjustment is attacked upon the further ground that it violates the petitioner's rights under the Constitution of the United States and the Constitution of the State of Delaware, in that it constitutes a taking of its property without due process of law, unequal treatment, and is arbitrary and without justifiable basis.
Both the Federal and our State Constitutions, U.S.Const. Amend. 14, Const. Del. art. 1, § 7, guarantee to every person equal protection of the law and provide that no person shall be deprived of life, liberty, or property without due process of law; but notwithstanding these constitutional guarantees the State retains the right, in the exercise of its police power, to impose certain implied limitations on the property rights of its citizens. The origin of this power is found in the conception that it was never intended that individuals should be granted the right to interfere with the State in the adoption of such measures as are reasonably necessary for the general protection of society and to preserve the peace, good order, safety, health and morals of the members of society. Mayor and Council of Wilmington v. Turk, 14 Del.Ch. 392, 129 A. 512; Van Winkle v. State, 4 Boyce, 578, 27 Del. 578, 91 A. 385; Ann.Cases 1916D, 104; In re Ceresini et ux., 8 W.W.Harr. 134, 8 Del. 134, 189 A. 433; Appeal of Blackstone, 8 W.W.Harr. 230, 190 A. 597.
The Board of Adjustment derives its authority to act in zoning appeals, from the ordinance adopted under the provisions of the Act of the Legislature authorizing the legislative bodies of cities and incorporated towns to adopt zoning ordinances, and its course in so acting is a proper exercise of the police power.
The petitioner makes the contention that the Mayor and Council of Wilmington, its officers and administrative agencies are bound by the prior determination of the Board of Adjustment which recognizes that petitioner's premises were and are not in a residence district under the zoning ordinance. This contention is apparently based upon the action of the Board of Adjustment on August 28, 1940, when it granted the owner permission to use the building for a furniture store and furniture exhibitions, and at the same time allowed it to reserve the right to use the building for wrestling and boxing bouts.
Prior to this order of the Board of Adjustment, The Auditorium in question had long been used for purposes which did not comply with the requirements of either a residence district or an apartment district, and said order simply granted the petitioner the right to use it for another purpose which did not comply with the requirements for a residence or apartment district, and to reserve the right to use it for the purpose for which it had originally been used. The district was held to be an apartment district.
I have previously considered this order of the Board of Adjustment and it is unnecessary for me to deal with it further in this connection.
The petitioner further contends that the determination of the Board of Adjustment as set forth in its resolution dated October 15, 1950, does not contain any findings of *604 fact or of law to support the conclusion reached and is arbitrary and unreasonable; and further that the record of the proceedings before said Board does not sustain the determination made by it.
It must be admitted that the record of the proceedings before the Board could have set forth more fully what transpired, and the determination of the Board could have been supported by more findings of fact, but I do not consider that it is arbitrary and unreasonable. In my determination of the questions raised before me, I not only had access to the record of the proceedings before the Board and the findings made by it, but evidence was introduced consisting of numerous exhibits and several witnesses.
Having determined that the auditorium in question is located in either a residence or an apartment district, the order of the Board of Adjustment is hereby affirmed.