WILMINGTON VITAMIN & COSMETIC CORP., a corporation of the State of Delaware, Petitioner, v. PAUL C. TIGUE, G. EDWARD CASPER, C. EMERSON JOHNSON, F. PERRY RAGGAINS, and W. LEMAR PIERCE, as Members of the Delaware State Board of Pharmacy, Respondents.

(*July* 18, 1962.)

Lynch, J., sitting.

*Ernest S. Wilson, Jr.* (of Wilson and Lynam) for Appellant, Wilmington Vitamin & Cosmetic Corp.

*Thomas Herlihy, III*, and *Peter W. Green*, Deputy Attorneys General, and *Joseph Donald Craven* for Delaware State Board of Pharmacy, Appellees.

Superior Court for New Castle County, No. 357, Civil Action, 1962.

Lynch, J.:

On December 1, 1961 Wilmington Vitamin & Cosmetic Corp. (referred to hereafter as Appellant[1]) filed an applica-

---

[1]Title 24 *Del. C.* § 2557 provides:

"(a) Any person, to whom the Board has refused to issue a permit to conduct a pharmacy * * * may appeal from the decision and order of the Board to the Superior Court of the county in which the * * * proposed pharmacy in question * * * is intended to be located, at any time within 30 days after the date of the receipt by the applicant of the decision of the Board."

When the appeal was lodged, the Board Members were made parties to the appeal in their individual capacities. The Secretary of the Board was likewise named a party appellee. In light of the above quoted provision and of other provisions found in Title 24 *Del. C.*, Ch. 25, Sub-Chapter I, and Sections 2501-2505, and Sub-Division IV and specifically Sections 2551, 2553, 2554, and 2557, I preliminarily ruled that individual Board Members or the Secretary are not properly parties appellee. Consequently, counsel was directed to prepare an order providing for their dismissal as parties to this appeal. Such an order has been entered and the caption of the case on appeal changed in accordance with the preliminary ruling.

tion with the Delaware State Board of Pharmacy (referred to hereafter as Board), pursuant to the pertinent provisions of the State Laws, for a permit to open and establish a pharmacy. The application was made on the form prescribed by the Board and all the information called for by the statute and the application form was submitted to the Board.

The pertinent provisions of the statute,[2] found in Title 24 Del. C., Chapter 25, are herewith set out:

---

[2]The place and need of Sub-Chapter IV of Chapter 25 of Title 24 *Del. C.* in the regulation of the profession of pharmacy and in the regulation of retail pharmacies may be open to debate. Sub-Chapters I, II, III, V and VI seemingly provide all the measures needed for the protection of the health and safety of the public and for regulation of pharmacies and pharmacists.

Counsel for Appellant suggests that since it was adopted in 1937, there may be some relationship between the ruling made by the Superior Court in *State v. Peoples Drug Stores, Inc.,* 6 W. W. Harr. 120, 172 A. 257 (Super. Ct. 1934) and the enactment in 1937 of Volume 41 *Del. Laws,* Ch. 87, now Subdivision IV—at the suggestion of the Board.

The inclusion of the second paragraph of § 2551, which reads—

"If it is desired to operate, maintain, open or establish more than one pharmacy, separate applications shall be made and separate permits issued for each."

also gives a possible clue—that the cited statute was enacted so as to give the Board some form of control over chain pharmacies. In *State v. Peoples Drug Stores, Inc.* Judge Rodney, speaking for the Superior Court, observed, 6 W. W. Harr. at 122, 172 A. at 257, 258:

"In *Liggett Co. v. Baldridge,* 278 U. S. 105, 49 S. Ct. 57, 73 L. Ed. 204, the Supreme Court of the United States passed upon the Pennsylvania statute (P. L. 1927, p. 1009), the first section of which provided 'Every pharmacy or drug store shall be owned only by a licensed pharmacist * * *.' The Supreme Court reiterated the principle that the right to do business was a property right to be protected against unreasonable invasion. The Court sustained the right of a State to 'regulate the prescription, compounding of prescriptions, purchase and sale of medicines, by appropriate legislation to the extent reasonably necessary to protect the public health.' The Court held that every point at which the public health could be injuriously affected by the act of the owner in buying, compounding or selling drugs or medicines was amply safe-guarded by provisions of law other than mere 'ownership.' All these statutory provisions of Pennsylvania considered by the Supreme Court have their counterparts in the statutes of the State of Delaware. The Court said:

" 'The act under review does not deal with any of the things covered by the prior statutes above enumerated. It deals in terms only with ownership. It plainly forbids the exercise of an ordinary property right and, on its face, denies what the Constitution guarantees. A state cannot, "under the guise of protecting the public, arbitrarily interfere with

"§ 2551. No person shall \* \* \* open or establish any pharmacy within this State without first having obtained a permit so to do from the Board."

"§ 2552. The application for a permit required under this subchapter shall be made on a form to be prescribed and furnished by the Board and shall be accompanied by a required fee of $1, \* \* \*."

"§ 2553. (a) On evidence satisfactory to the Board that—

"(1) the pharmacy for which the permit is sought will be conducted in full compliance with the law and with the rules and regulations of the Board;

"(2) the location and appointments of the pharmacy are such that it can be operated and maintained without endangering the public health or safety; and

---

private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them.' "

This discussion of the reasons for the inclusion of Sub-Chapter IV in Title 24, Ch. 25 of the Delaware Code is of no particular relevancy to this case. The Court feels compelled to point out that no provision is made in this Sub-Chapter for "notice and hearing" on an application for a permit to open, establish, operate or maintain a pharmacy. The statute, Title 24 *Del. C.* § 2553, by the use of the word "shall" apparently makes it mandatory on the Board to issue the permit if the application meets the requirement of the statute. It has not been here contended, and it is doubted that the Board would contend it has any discretion to refuse an application if there is full compliance on the part of an applicant with the statute. What was said in *State v. Peoples Drug Stores, Inc.,* *supra,* clearly establishes that there is a "right" to open a retail pharmacy if there is compliance with the health and safety measures provided in the statute.

At one time the Court considered striking the Sub-Chapter down as unconstitutional for want of due process because of the lack of requirement for "notice and hearing" by the Board on applications. Since the Court has other grounds for determining the appeal this constitutional question, see generally *Cantor v. Sachs,* 18 Del. Ch. 359, 364, 162 A. 73, 75 (Ct. Ch. 1932) and *State ex rel. Craven v. Schorr, et al.,* 11 Terry 365, 376, 131 A. 2d 158 (Sup. Ct. 1957), although it is so obvious, will not be considered and determined. The court takes note that Appellant was not invited to or represented at the meeting held by the Board to consider Appellant's application.

"(3) the pharmacy will be constantly under the personal and immediate supervision of a registered pharmacist, a permit shall be issued to such persons as the Board shall deem qualified to conduct such pharmacy.

"(b) No permit shall be issued * * * for the conduct of a pharmacy unless the premises of such pharmacy shall be equipped with proper sanitary appliances and kept in a clean and orderly manner."

"§ 2554. If an application for a permit to conduct a pharmacy is refused, the Board shall notify the applicant in writing of its decision and the reasons therefor."

The Board caused an inspection to be made of Appellant's premises on December 15, 1961 by its Secretary David Krigstein. Assumedly, the Secretary found Appellant's premises, § 2553(a) (2) and (3) and (b), were satisfactory. No immediate action, however, was taken by the Board on the application, so on February 7, 1962 Appellant instituted Civil Action No. 143, 1962 in this Court, seeking an issuance of a peremptory writ of mandamus, "directing" the Board "to issue a permit pursuant to 24 Del. Code § 2553" or in the alternative "to notify the [appellant] in writing of its refusal to issue a permit pursuant to 24 Del. Code, Section 2554."

The petition in that case, *inter alia*, alleged:

"4. The Board is in possession of satisfactory evidence that petitioner is entitled to a permit to operate a pharmacy pursuant to 24 Del. Code, Section 2554."
It further alleged that:

"6. Since December 1, 1961, respondent Board, its individual Members, and its Secretary have neglected and omitted either to issue a permit pursuant to 24 Del. Code, Section 2554, or to notify the applicant of its refusal to issue a permit pursuant to 24 Del. Code, Section 2554."

█ This Court held a hearing on this petition and the Board's answer thereto, following which hearing Judge Christie of this Court issued[3] a Peremptory Writ of Mandamus, on March 7, 1962, ordering the Board to take action on the application for a permit and to give notice of the Board's action not later than March 31, 1962.

Following the issuance of the Peremptory Writ of Mandamus the Board met at Dover on March 25, 1962 and acted on the application. The pertinent minutes of the Board (which are a part of the record on appeal) set out the action taken by the Board. These minutes are set forth in full, so far as they pertain to Appellant's application:

"Application for discussion: Wilmington Vitamin and Cosmetic Corp. of 613 Market Street, Wilmington, Delaware. Inspector's report was given:

"1) Edward Pastor initiated the request for the original application. A report was read concerning Mr. Pastor's previous record from Narcotic Division of Treasury Department.

"2) Violation of trademark act and Section 2589 of Delaware Code Title 24 Chapter 25 substitution of drugs.

"3) Affidavit from Mr. Marshall Kalen was read as received from attorney Ernest Wilson representing Wilmington Vitamin & Cosmetic Corp.

"4) Letter was read as received from Deputy Attorney General Thomas Herlihy III. This letter[4] concerned recommendations to the Board concerning this application under discussion.

---

[3] I regard this determination by Judge Christie as a holding that the "Board is in possession of satisfactory evidence that [appellant] is entitled to a permit to operate a pharmacy * * *" as was alleged in the Petition for a Writ of Mandamus. This placed a burden on the Board to show good cause otherwise if the application was to be denied.

[4] Reference is made hereafter to this letter at several points of this opinion.

"5) Letter from Pennsylvania State Board of Pharmacy concerning Mr. Pastor's suspension of Pharmacy license from July 13, 1960 to September 17, 1961.

"This completed inspector's report.

"Following discussion from Board Members:

"1) Mr. Edward Pastor has been seen behind the counter in 613 Market Street of Wilmington Vitamin & Cosmetic Corporation by Mr. G. Edward Casper.

2) Firm has violated Delaware Fair Trade Law—Title 6 Chapter 19.

"Pharmacy permit was denied and Secretary was instructed to remit letter stating that the denial was based on Delaware Code Title 24 Chapter 25 Section 2553(a) (1). Letter to be sent by March 31, 1962 as ordered by Judge Christie in Mandamus proceedings early in March 1962."

On March 27, 1962 a letter was mailed to Wilmington Vitamin & Cosmetic Corp., signed by David J. Krigstein, Secretary of the Delaware State Board of Pharmacy. That letter reads in full as follows:

"Gentlemen:

"The application for a pharmacy permit at 613 Market Street, Wilmington, Delaware has been denied.

"The denial is based on Del. Code Title 24, Chapter 25, Section 2553 (a) (1)"[5].

Cordially,<br>
"/s/ David J. Krigstein<br>
"Secretary"

On March 29, 1962, two days after the issuance of the Board's letter of denial of the application, Appellant filed this

---

[5]See page 5 for provisions of cited statutory provisions.

appeal, pursuant to 24 Del. Code, Section 2557(a), which statute is quoted in footnote 1, *supra*, page 12.

The minutes, as set forth above on pages 16 and 17, refer to an inspector's report followed by two numbered paragraphs which the Court regards as the findings required by the statute, Title 24 Del. C. § 2553, showing the reasons for denial of the application. It is to be noted that these findings in their entirety are as follows:

"1) Mr. Edward Pastor has been seen behind the counter in 613 Market Street of Wilmington Vitamin & Cosmetic Corporation by Mr. G. Edward Casper.

"2) Firm has violated Delaware Fair Trade Law—Title 6, Chapter 19."

Some comment is necessary as to whether the reasons given by the Board are legally sufficient to justify denial of the application. This comment will include some references to the record certified by the Board to this Court, and on which record Appellant's application was considered and determined, as it shows the basis for the reasons given by the Board for denying the application. Reference will be made too to the law, so that a proper perspective of the entire situation can be established for a determination by this Court of the case on appeal.

The record shows *first* that one Edward Pastor addressed a letter in November 1961 to Mr. Krigstein, Secretary of the Board, reading:

"Kindly send Application for Opening a Pharmacy in State of Delaware.

"I would greatly appreciate application soon as possible." There was a Postscript to the letter, reading:

"P.S. The First Application was erroneously made"

The application from Appellant and as received by the Board made no reference whatsoever to the name of Edward Pastor; his name did not appear therein; moreover, there was an affidavit in the record, made by President of Appellant, stating:

"No person having the name of Edward Pastor or any similar name is now or has ever been an officer, director, or employee of Wilmington Vitamin & Cosmetic Corp."

Notwithstanding this, the name of Edward Pastor is written into the application, in brackets, under the heading—"Names of all unregistered employees in Pharmacy".

A Stipulation was filed with the Court, signed by counsel for the parties, stating that Pastor's name "was inserted in the pharmacy application by David Krigstein, who is Secretary of the Board, and was not inserted by the applicant". A like statement appears in the Certification of the record, made over the hand of David Krigstein, "Secretary State Board of Pharmacy". Five different papers pertaining to Mr. Pastor's past activities and to his record with the Pennsylvania State Board of Pharmacy and the Federal Bureau of Narcotics appear in the record.

No possible relationship of Mr. Casper's[6] having seen

---

[6]A member of the Board, I might point out. I call attention to an Annotation entitled "Administrative Decision or Finding Based on Evidence Secured Outside of Hearing", to be found in 18 *A. L. R.* 2d 552, where it is said at page 555:

"As a general proposition, it is not proper for administrative authority to base a decision of adjudicatory nature, or findings in support thereof, upon evidence or information outside the record, and in particular upon evidence obtained without the presence of "and notice to the interested parties, and not made known to them prior to the decision."

In *Radic v. Fullilove,* 198 F. Supp. 162 (U. S. D. Ct. N. D. Calif. 1961) there is an excellent discussion of "procedural due process". The discussion emphasizes the need that procedure before an Administrative Agency must be "essentially fair" otherwise the party involved in the Administrative Process "has not been afforded procedural due process", and this includes the party's right to be given the "opportunity * * * to explain, rebut, contradict or impeach" the testimony and documents

Mr. Pastor "behind the counter in 613 Market Street of Wilmington Vitamin & Cosmetic Corporation" is shown with respect to the action of the Board in giving this as a reason for denying of the application, and in light of the application, as submitted, and the affidavit of the Appellant's President, I can see no relevancy under the law between what Mr. Casper saw as to Mr. Pastor's having been on Appellant's premises[7] or to Mr. Pastor's past record with the Pennsylvania State Board of Pharmacy or with the Federal Bureau of Narcotics and the application. This reference to Mr. Pastor has no place in this case on the present record and I propose

---

relied on by the Administrative Agency for the action it takes on the matter before it.

In *Reardon v. Dental Commission,* 128 Conn. 116, 20 A. 2d 622 (1941) the Supreme Court of Errors of Connecticut dealt with the revocation of a dental license based, in part, upon evidence developed by one of the members of the Dental Commission. While the Connecticut statute required a hearing, the holding (20 *A.* 2d at 624) is most significant, since it too refers to the concept of "due process":

"Such (personal investigation of charges by commissioners) * * * might well lead them to approach the hearing with a preconceived idea of guilt or innocence of the accused. He would, very likely, be placed in the position of having to overcome, by evidence he might produce, this idea. Moreover, such an investigation would be apt to result in violation of that requirement of due process of law that when called upon to answer shall be confronted with the evidence against him."

The Supreme Court of New Jersey reached a similar conclusion in *Giordano v. City Commission of City of Newark,* 2 N. J. 585, 67 A. 2d 454, 455:

"No determination can be permitted to rest upon undisclosed findings for information dehors the record. If such could be the parties would be denied the essence of a hearing, they would be kept in ignorance of the things controlling the action of the Board, and due process would be flouted." See also *Coleman v. Watts,* 81 So. 2d 650, 652 (Sup. Ct. Fla. 1955); *Mazza v. Cavicchia,* 15 N. J. 498, 105 A. 2d 545; *Kerney v. Trecker, Corp. v. N. L. R. B.* (C. A., 7th) 209 F. 2d 782 and *Welsh v. County Board of School Trustees,* 22 Ill. App. 2d 231, 160 N. E. 2d 505.

Many of these cited cases dealt with evidence which should have been, but was not, produced at a hearing. The question of whether or not the applicant had sufficient notice of evidence to be presented prior to the hearing occasionally causes these Courts some difficulty. Such difficulty, of course, was not presented in the instant case, since no hearing was afforded the Applicant.

[7]Comment has already been made to the possible unconstitutionality of Sub-Chapter IV of Chapter 25 *Del. C.,* because no provision is made in the statute for notice and a hearing on applications for pharmacies. It is sufficient to note here that had a hearing been held on the

to and will disregard such references as having no proper place in the record or as affording the Board a reason to refuse the application.

The second reason advanced by the Board for its denial of the application was:

"2) Firm has violated Delaware Fair Trade Law—Title 6, Chapter 19."

Title 24 Del. C., § 2554 (a) (1) provides:

"(a) On evidence satisfactory to the Board that—

"(1) The pharmacy for which the permit is sought will be conducted in full compliance with the laws and with the rules and regulations of the Board."

The record did not include any "rules and regulations of the Board"; it did contain a number of "Rulings". At oral argument it was made plain that the Board had not adopted and promulgated any rules and regulations, notwithstanding Title 24 Del. C. § 2503(a)[8] empowers the Board to—

---

Appellant's application the Board could, if the evidence and circumstances justified, have shown some odious relationship between Appellant and Mr. Pastor; at least the opportunity for cross examination of Applicant-Appellant's witnesses would have provided counsel for the Board a means to establish the possible untruthfulness of the contents of the application and of the affidavit mentioned above, see page 11.

I must make some reference to a letter (see footnote 4, *supra*), sent by the office of the Attorney General of this State to the Secretary of the Board, under date of March 20, 1962, in which the Board was advised:

"the evidence about Edward Pastor we felt that since he is now in good standing with the State of Pennsylvania and has no criminal record in Delaware would nullify any serious consideration regarding his connection with the 'Appellant'."

In light of this letter I am at loss to comprehend the Board's references to Mr. Pastor. It would appear that the Board was reaching for straws to justify a possibly preconceived intention to deny Appellant's application.

[8]Title 24 *Del. C.* § 2503(b) requires: "The Board shall keep a record of its proceedings * * *."

"Adopt such rules and by laws, not inconsistent with laws, as may be necessary for the regulation of its proceedings, and for the discharge of the duties imposed under this chapter, or any laws of this State."

Hence, we can proceed on the basis that the Board had no basis for denial of the application because Applicant would conduct its pharmacy otherwise than "in full compliance * * * with the rules and regulations of the Board".

The record contains copies of a number of Complaints filed in our Court of Chancery against Appellant by manufacturers and licensed pharmacists seeking to enforce the Fair Trade Act, Title 6 Del. C. §§ 1901-1907 and one order issued by a Vice Chancellor in an action brought by a manufacturer enjoins Appellant from continued violations of the Fair Trade Act, Title 6 Del. C. §§ 1901-1907 by selling "fair trade items at prices less than the minimum retail, resale prices" stipulated by the manufacturer.

Mention has already been made of the Attorney General's letter[9] sent to the Board, regarding suggested action by the Board on Appellant's application. The Attorney General advised the Board in this letter, among other things,—

"* * * the evidence that you now have regarding the application is not sufficiently strong to warrant the refusal of a pharmacy permit. We felt that the alleged fair trade law violations were more of an economic consideration as opposed to the public health and welfare requirements of 24 Del. C., § 2553. In other words, we felt that the statutory requirements for a pharmacy permit were aimed at the public welfare and safety, and, therefore, economic considerations would not play a part in an application for a permit unless that affected the health and safety of the public in general."

It may be noted in passing that the record includes a

See footnote 4, *supra,* at page 16.

letter report, dated December 8, 1961,[10] addressed to the Board from a private detective agency advising that two investigators of the agency had "shopped" Appellant's store and sought to make "purchases" of "trade marked" pharmaceuticals and were urged to and did buy products which contained identical ingredients but sold at a price less than those items which were "trade marked". These transactions[11] were considered in the Attorney General's letter.[12]

The advice of the Attorney General on these transactions was as follows:

"Finally, the alleged trade marked violations are not strong enough in and of themselves to warrant the refusal of a permit. In other words, when a person enters a store seeking a certain product and ends up buying another product which was urged upon him, this is the decision on the part of the buyer without further consultation with his doctor. Again, trademark violations are mainly economic considerations and not considerations regarding the health and safety of the public unless the substituted product is not the same (chemically) as the product originally sought by the buyer."

The concluding paragraph of the Attorney General's letter is giving advice to the Board and it is set forth because it shows to what extent the Board chose to ignore the Attorney General's advice with respect to the reasons given by the Board in denying the application.

"Please understand this merely represents our advice on the above matters on facts which are currently within our knowledge. With this in mind, it is our opinion that there is

---

[10]The application filed by Appellant was dated December 1, 1961.

[11]The comments made of the evidence obtained by Mr. Casper and discussed in footnote 6 at pages 19 and 20, would appear applicable here since the vice of Mr. Casper's report would be applicable to this report as it is obvious the Board had engaged the services of the Private Detective Agency to "shop" applicant's store and without giving the applicant the "opportunity * * * to explain, rebut, contradict or impeach" this report, see *Radic v. Fullilove, supra,* cited in footnote 6.

[12]See footnote 4, *supra,* at page 16.

insufficient grounds to refuse a pharmacy permit at this time."

It is also of interest in connection with the motions filed by the Board seeking remand of the proceedings so that further consideration could be given to the application, which motions are considered later.

The record, as analyzed, sets out but one substantial reason for the Board's denial of Appellant's application for a pharmacy permit, and that is—

"the pharmacy for which the permit is sought will" not "be conducted in full compliance with the law * * *."

Since, as has been pointed out, the Board never adopted rules and regulations, it becomes only necessary to determine the meaning to be given to the term "the law", appearing in Title 24 Del. C. § 2553(a) (1)—the section noted by the Board in the letter sent as required by Title 24 Del. C. § 2554, to Appellant.

Study of Chapter 25 of Title 24 Del. C. and the Code clearly shows that this term must mean "the law" which appears generally in Chapter 25 of Title 24 of the Code. See *Safeway Stores v. State Board of Agriculture,* cited post pages 21 *et seq.*, particularly at page 22, post. In addition to references to pharmacists, retail pharmacies, hospital pharmacies, and the manufacturers, etc. of certain pharmaceutical items, the Board was vested, Title 24, § 2589, with power over sale of substituted drugs, and with specific power to "enforce the provisions of * * * the law relating to pure drugs, as provided by Section 3315 of Title 16.

Title 24, § 2503(a) (2) of the Code empowers the Board to—

"Employ an attorney to conduct prosecutions or to assist in the conduct of prosecutions under this chapter."

That section, when carefully considered, gives a clue to the powers of the Board; in fact consideration of the entire chap-

ter leads me to conclude that these stated powers pertain solely to the regulation of retail and hospital pharmacies and pharmacists, except that Sub-Ch. V shows the Board has been given power over the manufacture, production, packing, packaging or preparation of "drugs or medicines, toilet preparations, dentifrices or cosmetics" and a permit is required from the Board to act in any of these matters. I am wholly convinced that the Board has no power whatsoever to enforce the Fair Trade Law, Title 6 Del. C. §§ 1901-1907, since that law provides the method of enforcement of that law. Nowhere is provision made therein or elsewhere for any enforcement of that statute by the Board. It is quite clear to me that the Board's powers, such as were vested in it by the statute, are limited to guarding the health and safety of the public; nowhere has the General Assembly provided the Board with any powers to make any rules or otherwise to impose any economic regulations, see *Stadnik v. Shell's City, Inc.*, decided by the Florida Supreme Court May 11, 1962 and reported at 140 So. 2d 871, where that Court considered and struck down as an invalid usurpation of powers a rule adopted by the Florida Pharmacy Board, attempting to regulate advertisements of the prices of prescription drugs. The Florida Supreme Court, 140 So. 2d at p. 875 said:

"*In actuality, the rule has more resemblance to an economic regulation appropriating price competition in the prescription drug business than it does to a regulation guarding the public health.* * * * The effect of the rule simply is that the druggist cannot advertise the price of a prescription drug even though he is prohibited by law from selling the drug except upon the prescription from a physician. *There is simply no reasonable justification for such an administrative intrusion on private rights when the regulation is so completely lacking in public benefit.* * * *" (Emphasis supplied)

See also *State v. Peoples Drug Store, Inc.*, cited *supra* in footnote 2, quoting from *Liggett Co. v. Baldridge*, 278 U. S. 105,

49 S. Ct. 57, 73 L. Ed. 204 (U. S. Sup. Ct. 1928). It was said in the latter case that:

"* * * A state cannot, 'under the guise of protecting the public, arbitrarily * * * impose unreasonable and unnecessary restrictions upon them.' "

There must be "a reasonable relation to the public health", otherwise, said the Supreme Court of the United States, the regulation "rests upon conjecture, unsupported by anything of substance. * * *"

■ It is well established that administrative agencies, such as the State Board of Pharmacy, derive their powers and authority solely from the statute creating such agencies and which define their powers and authority, 73 C. J. S. Public Administrative Bodies and Procedure § 49, citing, among many other cases, *Diamond State Liquors v. Delaware Liquor Commission*, 6 Terry 112, 420, 75 A. 2d 248, 253 (Gen Sessions 1950) and *In re Auditorium*, 7 Terry 430, 84 A. 2d 598, remanded 8 Terry 373, 382, 91 A. 2d 528, 533 (Sup. Ct. 1952).

See also 1 Am. Jur. 2d, Administrative Law, § 72.

It is stated, 73 C. J. S. Public Administrative Bodies & Procedure § 49 at page 371, that:

"The powers of administrative agencies * * * must affirmatively appear from the enactment under which they claim to act. * * * Any reasonable doubt as to the existence of any particular power should be resolved against it * * *."

See also 1 Am. Jur. 2d, Administrative Law, § 70.

The statutory powers granted to the Board relate solely to pharmacists, retail pharmacies, hospital pharmacies, and the manufacturers, etc. of certain "drugs or medicines, toilet preparations, dentifrices or cosmetics"; no power has been granted to the Board to act in any respect in the enforcement of the Fair Trade Law or in other economic fields.

The duty of an appelate Court, in reviewing orders of an Administrative Agency, is well stated in *Safeway Stores v. State Board of Agriculture*, 198 Or. 43, 255 P. 2d 564, 569 (1953). At the cited page the Oregon Supreme Court said:

"* * * if the Milk Marketing Act does not authorize [the State Board of Agriculture] to afford present processors the benefit of restricted competition, then the findings of fact

* * * which are based solely upon the premise that Salem has a sufficient number of processing plants, demand that the challenged order must be vacated."

At a later point in this same paragraph the Court observed:

"* * * if the findings of fact do not support an order which is challenged by a writ of review, the reviewing court must vacate the order * * *. A writ of review calls upon the court to match the findings of fact with the agency order and if the former do not justify the latter, the order must be held illegal."

At 255 P. 2d at page 575 the Oregon Court referred to the statutory language and noted:

"* * * Its language is sweeping and authorizes the defendant 'to supervise and regulate the milk industry'. If the seven words quoted must be given their literal import throughout the act, all of the rest of the latter, * * *, could have been left unpenned."

Continuing the Court (*Id.*) then said:

"* * * In contrast to the general and indiscriminate provision just quoted, the act contains many sections which are specific and which clearly identify the course of action which the defendant is authorized to pursue in the instances to which they are germane. It is our duty to construe and give effect to the act in its entirety. After reading the whole act, we must seek from all of its terms the purpose of the enact-

ment, for the intention of the whole controls the meaning of the parts. * * *"

The Oregon Court used other language, 255 P. 2d on page 576 which is most expressive—and determinative here:

"The draftsman of a statute, unlike a painter or a sculptor, has no choice of materials, such as canvas, bronze or marble, with which to work in depicting the ideas which he wishes to portray. Bronze, marble, paint and clay respond to the artist's touch and subject themselves to his control. But there is available to a draftsman of a statute only words—inflexible and yet treacherous in their connotation. They do not forge in the minds of all readers the same images.

"In an effort to find the ideas which are packaged in words, the courts have fashioned the rules of statutory construction. Those rules always give preference to specific provisions over others which are general or abstract. One of the rules holds that definite provisions in a statute relating to the subject under consideration control general provisions, in the absence of language which requires a contrary holding. * * * In the construction of legislation which confers authority upon officials, the rules render the courts ever sensible to the axiom that ours is a government of laws and not of men. See, generally, 12 Tulane Law Rev. 179. Another of the rules is expressed by Sutherland, Statutory Construction 3d Ed., § 322, as follows:

" 'The tendency of the more recent cases is to sustain delegations of the licensing power even when broad discretions are delegated. This tendency seems justifiable when activity of licensing is an appropriate field for legislative regulation and where the determination of conditions is impracticable for legislative resolution and the legislature has provided as practical a standard for administrative guidance as is appropriate for the particular regulation.'

\* \* \* \* \* \*

" '* * * In *Board of Railroad Commissioners of the State of Oregon v. Oregon Railway and Navigation Company*, 17 Or. 65, 19 P. 702, 707, this court said:

" ' "*It has for a long time been considered the safer and better rule, in determining questions of jurisdiction of boards and officers exercising powers delegated to them by the legislature to hold that their authority must affirmatively appear from the commission under which they claim to act.* (Emphasis supplied)

" ' "*There is too strong a desire in the human heart to exercise authority, and too much of a disposition upon the part of those intrusted with it to extend beyond the design for which and the scope within which it was intended it should be exercised, to leave the question of its extent to inference. Should it be so left serious disturbances might arise involving a conflict of jurisdiction, which would be highly detrimental to the community.* (Emphasis Supplied)

" ' "*It is not, it seems to me, requiring too much of the legislative branch of the government to exact, when it creates a commission and clothes it with important functions, that it shall define and specify the authority given it so clearly that no doubt can reasonably arise in the mind of the public as to its extent.*" (Emphasis supplied)

" 'In the more recent case of *Layman v. State Unemployment Compensation Commission*, 167 Or. 379, 117 P. 2d 974, 982, 136 A. L. R. 1468, the court said:

" ' "It is an elementary and fundamental principle, which no one will dispute, that a commission, created by the legislature to administer a statute, is wholly limited in its powers and authority by the law of its creation. No more unwholesome doctrine could be suggested than such a body is vested with discretion to ignore or transgress these limitations even to accomplish what it may deem to be laudable ends. That would be to

leave room for that 'play and action of purely personal and arbitrary power' condemned in *Yick Wo v. Hopkins,* 118 U. S. 356, 6 S. Ct. 1064, 1071, 30 L. Ed 220, 226. If the statute as written is not workable, then the remedy is with the legislature * * *."

\* \* \* \* \* \*

" 'If, in a doubtful case, the court should expand the legislative delegation of power beyond the legislative intent, it would, to that extent usurp the function of a coordinate department and permit the immediate exercise of powers which are not for courts to bestow. * * *'

"That decision renders it clear that any official, such as the defendant, who claims that authority was delegated to him to enter the order under challenge must place his finger upon legislation couched in express and nonambiguous language. In fact, it must be worded in terms so clear 'that no doubt can reasonably arise in the mind of the public.' "

■ This Court has heretofore ruled that if an Adminitrative Agency decides a matter brought before it upon grounds not justified under the statute creating the Agency, the action of such Agency will not be sustained.

In *Wilmington Country Club v. Delaware Liquor Commission,* 8 Terry 352, 363, 364, 91 A. 2d 250, 255, 256 (1952) the Wilmington Country Club applied for an off-premises license for the sale of alcoholic liquors. The Liquor Commission denied the license, setting forth several grounds therefor. President Judge Terry of this Court, in reversing the Commission said: (8 Terry 365, 91 A. 2d 256)

"* * * If an application by a club for an off-premises license is to be refused, then the reason must be other than the one asserted in the present case. * * *"

*Application of Julian,* 167 A. 2d 21 (Del. Super. Ct. 1960); *Searles v. Darling,* 7 Terry 263, 268, 273, 83 A. 2d 96, 98, 101

(Sup. Ct. 1951); *Auditorium, Inc. v. Board of Adjustment,* 8 Terry 373, 381-383, 386, 91 A. 2d 528, 532-533, 535 (Sup. Ct. 1952) and *Application of Emmett S. Hickman Co.,* 10 Terry 13, 28, 108 A. 2d 667, 675 (Sup. Ct. 1954) are to the same effect.

In this case, two reasons are asserted for the denial of the license. Giving the Board's fact findings the benefit of all imaginable inferences in their favor, they amount to the following:

(1) One Edward Pastor was found to have had some connection with applicant, not in any wise supported by the record.

(2) The applicant had "violated" the Delaware Fair Trade Law, a matter entirely outside the scope of the Board's regulatory field.

To paraphrase Judge Terry, if the permit was to be denied, then the reasons must have been other than the ones asserted by the Board and appearing in the record. I find and hold that the reasons stated in the record did not justify the Board to deny the application.

Before oral argument was held the Board moved "the Court to direct the Prothonotary to refer the * * * case back to the Defendants with instructions that the case be reopened and both parties be given an opportunity of presenting additional evidence".

Consideration of this motion involves a determination as to whether this Court has been given power, under the statute[13] to order a remand.

---

[13]Title 24 *Del. C.* § 2557 does not authorize any remand. Delaware has no Statute providing for a uniform method of appeal from decisions of Administrative Agencies. Title 10 *Del. C.* § 562 does empower the Superior Court to "frame and issue all remedial writs, including writs of

 Our Supreme Court has, in three cases, considered the existence of such a power, and has ruled, *Searles v. Darling,* 7 Terry 263, 83 A. 2d 96 (1951); *Auditorium, Inc. v. Board of Adjustment,* 8 Terry 373, 91 A. 2d 528 (1952) and *Board of Education v. Shockley,* 2 Storey 237, 155 A. 2d 323 (1959) rehearing denied, 2 Storey 277, 156 A. 2d 214, that this Court does not have the power unless it is specifically granted by statute. The statute considered in the latter case specifically granted a power of remand.

In *Searles v. Darling, supra,* the Supreme Court observed, 7 Terry at page 271, 83 A. 2d at pages 99-100.

"* * * we see nothing in the Delaware Statute giving the Superior Court the authority to remand the proceeding. The Statute simply says that the court 'may reverse or affirm,

---

* * * certiorari, or other process" and such "writs shall be granted of course and shall be in such form and returnable at such time as may be prescribed by the rules of the Court, or otherwise as the particular case may require." Rule 72, Civil Rules of Procedure of the Superior Court, *Del. C. Ann.,* applies "to appeals * * * from all Commissions, Boards or Courts from which an appeal may * * * lie to the Superior Court to be tried or heard on the record made below." ¶ (g) of the Rule directs that "appeals shall be heard and determined * * * upon the record of the proceedings below, except as may be otherwise expressly provided by Statute. * * *" The Rule makes no reference to the power of remand.

It was said in *Delaware Barrel and Drum Co., Inc. et al v. Mayor and Council, et al.,* 175 A. 2d 403 (Del. Super. Ct. 1961) that "the common-law writ of certiorari lies to review acts which are judicial or quasi-judicial in nature, and does not lie to review acts which are administrative or legislative in nature." It was there held that "tax boards act in a judicial capacity in making and reviewing assessments of taxes and their decisions are subject to review by certiorari." 53 *Del. Laws,* Ch. 33, however, now provides for a method of appeal from actions of boards of assessments and directs the appeal to "be heard on the record and proceedings of the board".

In *Rodenhiser v. Department of Public Safety, et al.,* 11 Terry 585, 137 A. 2d 392 (Super. Ct. 1957) this Court ruled that "the evidence before the [Administrative Agency] is not a proper part of the record in common law *certiorari* proceeding."

There is great divergency in the provisions of the statutes providing for court review of decisions made by Administrative Agencies; the statutes are not uniform in any sense of the word; each statute provides its own method of review; sometimes the statute prescribes the record which is to be considered by the Superior Court; in other instances it

wholly or partly, or may modify the decision brought up for review'. * * *"

The ruling was restated by the Supreme Court in the *Auditorium, Inc.* case, 8 Terry at page 380, 91 A. 2d at page 532.

This power of remand was considered in a very scholarly opinion of the Supreme Court of New Mexico in *State ex rel. Transcontinental Bus Service v. Carmody*, 53 N. M. 367, 208 P. 2d 1073 (1949). The opinion considered both sides of the question, *i.e.* whether a reviewing court does or does not have the power in the absence of a specific legislative grant of power to remand, see 208 P. 2d at page 1076 and 208 P. 2d at page 1079. At this latter point the New Mexico Supreme Court reviewed cases and statements in treatises and encyclo-

---

does not and the extent of power of the Superior Court as to such review is in some doubt in many instances. Sometimes the statute gives the Court the power to remand the case to the Agency and in other instances the statutes are silent. In light of the divergency in such statutes this is confusing to say the least. The precise "manner" of review is not at all clear. An incomplete list is set forth below of statutes which do authorize court review of orders and decisions of Administrative Agencies.

Title 2 *Del. C.* § 175 provides for review of orders of the Delaware Aeronautics Commission—The aggrieved person "may have the action of the Commission reviewed by the Superior Court *in the manner provided for the review of the orders of other administrative bodies of the State, and the rules of law applicable to such reviews shall apply.*"

Title 4 *Del. C.* § 541 prescribes the method of appeal from decisions of the Delaware Alcoholic Beverage Control Commission. This statute requires that Commission to make a record of the hearing and directs certification thereof to the Superior Court. The cited section provides that if the Court "finds that additional evidence should be taken, the court may take the additional evidence or remand the cause to the Commission for completion of the record. If the court finds that the Commission has made an error of law, the court shall reverse or modify the Commission's decision and render an appropriate judgment." The power to remand is specifically granted.

Decisions of the New Castle County Board of Adjustment are reviewable, 9 *Del. C.* § 2618, by a "writ of certiorari". That law directs that Board "to return certified or sworn copies" to this court of "the original papers acted upon by it". This Court is authorized to "take evidence, or appoint a referee to take such evidence as it may direct and report the same to the Court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the deter-

pedias to the effect that a Court reviewing Administrative orders may remand the cases to the Agency for the purpose of taking additional testimony, and concluded (208 P. 2d at page 1079):

"In every case cited * * * the Supreme Court [of the United States] was dealing [*Ford Motor Co. v. N. L. R. B.,* 305 U. S. 364, 59 S. Ct. 301, 83 L. Ed. 221] with a congressional act containing specific authority to remand for further proceedings. * * *"

The New Mexico Supreme Court then considered statements to the same effect to be found in Vom Baur's work on Federal Administrative Law, in an annotation in 153 A. L. R. 1028, and the discussion in 42 Am. Jur. 689, observing (*Id.*) of such statements made in the annotation:

---

mination of the Court shall be made." The Court is authorized to "reverse or affirm, wholly or partly, or may modify the decision brought up for review." There is no power of remand granted.

Professional employees of Boards of Education, State or otherwise, are given the right of appeal, 14 *Del. C.* § 1414, from decisions terminating their services. The statute provides "the notice of appeal and all other matters regulating the appeal shall be in the form and according to the procedure as shall be provided by the Rules of the Superior Court." It also provides "the cause shall be determined by the Court from the record which shall include a certified copy of the evidence * * *." The Court is empowered to "reverse, affirm or modify the decision of the board or remand the cause to the board for rehearing"; again we have a specific grant of power to "remand".

Appeals from decisions by Election Officials is dealt with in Title 15 *Del. C.* §§ 2101-2114. The Judge is directed to "hear appeals"; no particular procedure is provided.

Decisions made by the Air Pollution Commission are reviewable, Title 16 *Del. C.* § 1624. The Authority is directed to forward a certified "transcript of the proceedings" to the Court which is directed to "hear and determine the matter as a suit in law and equity."

Title 16 *Del. C.* § 6610 provides for Court review by "a writ of certiorari" of "any decision of the State Fire Prevention Comission" by certified petition of the aggrieved party. The Commission is directed to send to the Superior Court "certified or sworn copies" of "the original papers acted upon by it". The Court is authorized to take testimony, if found "necessary for the proper disposition of the matter". In other respects, the matter of review is comparable to that provided for review of decisions of the New Castle County Board of Adjustment.

Provision is made, Article XV, in the newly created "The Delaware River and Bay Authority", (53 *Del. Laws,* Ch. 145, approved July

"* * *. The citation of 2 Vom Baur Federal Administrative Law by the editor of the annotation in 153 A. L. R. 1028 * * * lends no support to the claim that the general rule, *even in the absence of statute* favors power in the reviewing court to remand for further proceedings before the administrative board. The most that can be said of them is that the statements support each other."

See also and compare 2 Am. Jur. 2d—Administrative Law— § 697, page 596, and § 764, page 664; see also *Gauthier v. Penobscot Chemical Fiber Co.*, 120 Maine 73, 113 A. 28, 31 (1921), where the Supreme Judicial Court of Maine speaks of the existence of the power of remand as being implied "under some circumstances".

 This Court, in determining what record is before

---

21, 1961) Title 17 *Del. C.* § 1701, for Judicial Review of "any by-law, rule, regulation, order or other action of the Authority or to determine the meaning or effect thereof * * *". Such review "may be brought in such court of each State, and pursuant to such law or rules thereof as a similar proceeding with respect to any agency of such State might be brought". The procedure or review is not set forth; nothing is specified as to the power of remand.

Decisions of the State Board of Health and the Labor Commission as to "what are poisonous fumes and gases and what are poisonous or injurious dust, lint or particles of material" in connection with employment of female labor may be reviewed, Title 19 *Del. C.* § 330, by "appeal to the Superior Court". No procedure is provided as to how the appeal is to be taken or what is to be considered by the Court on appeal.

Decisions of the Industrial Accident Board are reviewable by the Superior Court, Title 19 *Del. C.* § 2350(a). The statute authorizes the Court to adopt "proper rules [prescribing] the procedure to be followed in the case of such appeals"; it directs that "the cause shall be determined by the Court from the record" and authorizes the Court to "reverse, affirm or modify the award of the Board, or remand the cause to the Board for a rehearing". Again there is an express grant to remand vested in the Court.

Title 19 *Del. C.* § 3323 prescribes the procedure for "judicial review" of decisions of the Employment Security Commission. The Commission is directed to "certify and file with the Court all documents and papers and a transcript of all testimony taken in the matter, together with the Commission's findings of fact and decision thereon." No other direction is provided in the statute as to what action the Court may take created the Department of Labor and Industrial Relations. The statute provides for Court Review "to determine the reasonableness and valid-

it in its consideration of the appeal or of its review of the action or order by the Administrative Body, must look at the statute creating the Administrative Agency and fixing its powers. See footnote 13, starting on page 742, *supra.*

In both *Searles v. Darling,* 7 Terry 263, 83 A. 2d 96 (Sup. Ct. 1951) and in *Auditorium, Inc. v. Board of Adjustment,* 8 Terry 373, 91 A. 2d 528, 531 (Sup. Ct. 1952), it was ruled that "the record sent up by the Board would control the issue unless there was abuse of discretion or error of law."

See 7 Terry at page 270, 83 A. 2d at page 99.

In *Auditorium, Inc. v. Board of Adjustment, supra,* the Supreme Court said, 8 Terry at p. 380, 91 A. 2d at page 531:

"We again observe, as we observed in *Searles v. Darling,*

ity of any rule made pursuant" to Title 19 *Del. C.* § 113 "as an appeal from the determination of the Department. The appeal" shall be governed by the laws and rules of practice applicable to other civil actions.

Appeals are provided by Title 21 *Del. C.* § 2163, from decisions of the Motor Vehicle Department "refusing, rescinding, cancelling or suspending the registration of any motor vehicle."

Persons "aggrieved by any decision or penalty made, given, or imposed by the" Board of Pilot Commissioners may appeal, 23 *Del. C.* § 105 to the Superior Court. The proceedings are "as in the case of an appeal from the judgment of a justice of the peace for a debt or demand."

Orders of the "Commission on Water Pollution" may be appealed, 23 *Del. C.* § 710 to the Superior Court, and "the cause shall be determined by the court from the record (which shall include a typewritten copy of the evidence and the order of the Board)". The Court, "may reverse, affirm or modify the order of the Board, or remand the cause to The Court "may affirm, modify or revise the order of the Commission, in whole or in part" or it "may remand the cause" for "rehearing, in whole or in part." The Court is given power "to hear and determine all such the Board for a rehearing." This power is tantamount to orders of remand. The Court is given authority to "prescribe the procedure to be followed in case of such appeals."

Persons denied a license as a "professional Engineer" or as a "Land Surveyor" may appeal, 24 *Del. C.* § 2732 to the Superior Court, which is authorized to make "such decree sustaining or reversing the action of the Board as to it deems just and proper." The appeal follows the same procedure as is authorized where a license is revoked.

Appeal procedure is provided, 24 *Del. C.* § 2914, to persons who seek a license as a Real Estate Broker or Salesman, or whose licenses are to

Del., 83 A. 2d 96, 98, that the Board of Adjustment has failed to comply with 1935 Code, § 6234, requiring that the return of the Board of Adjustment to a writ of certiorari 'shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from." The record submitted to the Superior Court contains a statement of the Board's conclusions but omits any statement of the facts upon which they are based. This record, therefore, contains no basis for review. *The burden, therefore, was unfairly imposed upon the Superior Court to take testimony to ascertain the facts, since that court has no authority to remand the proceedings to the Board of Adjustment. Searles v. Darling, supra.*" (Emphasis supplied)

See also Rule 72 of the Rules of Superior Court *ante* at pages 742 to 746.

---

be revoked. The Superior Court cannot review questions of fact by the Delaware Real Estate Commission "in the absence of fraud". It is authorized to review questions of law; its jurisdiction may be invoked "by certiorari, mandamus, or by any other method permissible under the rules and practices of such Court, or the laws of this State." Elaborate provision is made for notice and hearing before the Commission and opportunity given for subpoenaing of witnesses and production of testimony, but there is no statutory requirement that the Commission is to make a record.

Appeals from orders of the Public Service Commission is provided in Title 26 *Del. C.* § 192. The appeal is to be determined from the record. appeals, and with power to make any and all rules needful or convenient in the premises."

Suspension or revocation of licenses issued by the Delaware Racing Commission (flat racing), Title 28 *Del. C.* § 325, is "subject to review, [by the Superior Court] upon questions of law only * * *". The same extent of review is provided in Title 28 *Del. C.* § 525 of the suspension or revocation of licenses issued by the Delaware Harness Racing Commission.

Decisions by the State Tax Board may be appealed, Title 30 *Del. C.* § 328, and that Court "is vested with jurisdiction to hear and determine all appeals"; it "may, by proper rules, prescribe the procedure to be followed in such appeals. Every such appeal shall be determined by the Court without the aid of a jury."

"Aggrieved" persons who are "directly affected" by orders of the State Board of Housing "may appeal * * * to the Court of Chancery * * * for the purpose of having the reasonableness and lawfulness of the order or decision inquired into and determined." Title 31 *Del. C.* § 4113,

The statement is to be found in 2 Am. Jur. 2d, Administrative Law, § 697, page 593, that—

"It is a general rule that in the absence of a statute so providing, a court is confined on review proceedings to the record made in the proceeding below, and may not hear new or additional evidence, unless the proceeding is a trial *de novo.* of an administrative agency, and the general rule is that in the absence of a statute providing otherwise, or a proceeding The same principle is applied in the field of review of action below which is not in accordance with due process requirements, judicial review of action of an administrative agency is not *de novo* but is limited to the record made in the proceeding before the agency, and the courts decline to hear new or additional evidence to review or revise findings of facts

except it is directed to hear "such actions * * * in a summary manner * * *." That statute does not grant the power to remand.

Vol. 53 *Del. Laws,* Ch. 259, repealing Chapter 1 of Title 19 *Del. C.,* the problem would be one of producing a record on which the Board's order was predicated. *Kaufman Construction Co. v. Holcomb,* 357 Pa. 514, 55 A. 2d 534, 174 A. L. R. 189 (1947) and *Ritter Finance Company, Inc. v. Myers,* 401 Pa. 467, 165 A. 2d 246 (19 ), as well as *Board of* "The Court" considers the action upon the "documents and exhibits considered by the Board * * * accompanied by a statement of the facts and reasons on which the order or decision is based and, if available, a transcript of the testimony taken at the hearing." The Court "shall hear and determine such appeal * * * on the record * * * and on such new and additional evidence as may be offered by either party."

It appears that procedure frequently is not provided for review of many of the important actions, orders and decisions of such Administrative Officials and Agencies as the State Board of Agriculture, State Banking Commissioner, the State Insurance Commissioner, the State Highway Department and the State Board of Health.

The Board of Bank Incorporation is given jurisdiction, Title 5 *Del. C.,* Ch. 7, Sub-Ch. II, over the formation of banks. Under Title 5 *Del. C.* § 726 it considers and determines applications for certificates of "public convenience and advantage" for the formation of banks. The cited section provides that "If the Board refuses to issue a certificate, no further proceedings shall be had, * * *". It is possible that applicants might have some limited court review of such refusal, as by certiorari in this Court; *Bank Control of South Carolina v. Thomason (Fidelity Finance Co.),* 236 S. C. 158, 113 S. E. 2d 544 (1960) consider some of the questions that would arise under legislation affecting this question.

Title 5 *Del. C.* § 2006 provides for an appeal to the Governor in

made by the administrative tribunal, especially where the evidence was available and could have been introduced in the administrative tribunal. * * *."

See also 73 *C. J. S.* Public Administrative Bodies and Procedure § 203; 3 *Am. Jur.,* Appeal and Error, § 835 and Minimum Standards of Judicial Administration by the late Chief Justice Vanderbilt, of the New Jersey Supreme Court, at page 497.

In concluding consideration of the extent of the Board's power of regulation, as well as the Court's power of remand and of what constitutes the record on appeal or review, I refer back to the portions of the Court's opinion in *Safeway Stores v. State Board of Agriculture, supra,* at pages 740 to 742, and specifically adopt the holdings of the Oregon Supreme Court—

---

matters relating to the approval of articles of merger or consolidation of Building and Loan Associations. His decision is not subject to review.

The State Bank Commission has the primary duty of considering and determining if such articles are to be approved. The Court of Chancery is empowered, 5 *Del. C.* § 2009, to appoint "three disinterested persons to appraise" the value of shares of dissenters. Their award, when confirmed by the Court "shall be final and conclusive".

An "aggrieved" person is given the right, 5 *Del. C.* § 2301(b), to have the action of the State Bank Commission reviewed by this Court in the licensing of persons engaged "in the business of receiving money for forwarding or transmission". The statute directs the Court to "determine *de novo,* and in a summary manner, all questions both of fact and law, touching upon the legality and reasonableness of" the Commissioner's determination. The Court is directed to "render a lawful and just judgment."

Licensees engaged in the business of Sales Finance—which handle financing of Installment Sales Contracts relating to Motor Vehicles, (See Vol. 52 *Del. Laws,* Ch. 335), are given a right of court review, 5 *Del. C.* § 2903(d), of the action of the State Banking Commissioner in suspending or revoking a license. The Court's power is like that granted by 5 *Del. C.* § 2301(b), *supra.*

Appeals or Court Review of orders of the State Board of Health are granted in some limited circumstances. For instance, licensees engaged in poultry processing "aggrieved by decisions" of the State Board of Health may appeal, 16 *Del. C.* § 3709, to this Court. The statute provides "issue shall be framed in that Court and a trial had."

Licensees or applicants for a license to manufacture soft drinks "may appeal", 16 *Del. C.* § 4310, from an adverse decision of the State

1. That unless the statute authorizes the Administrative Agency to make the order appealed from, the challenged order must be vacated as illegal.

2. It is the Court's duty, in ascertaining the powers of an Administrative Agency "to construe and give effect to" all the statutes relating to such Agency. The whole act, amendments thereof and supplements thereto, must be read together and from all of such legislation "the purpose of the enactments" considered, since "the intention of the whole controls the meaning of the parts".

3. The powers, the authority and the jurisdiction of Administrative Agencies must affirmatively appear from the legislation under which they claim to act and are not to be inferred; it is for the General Assembly to "define and specify the authority given [to an Agency] so clearly that no doubt can reasonably arise in the mind of the public as to its extent".

4. Any Administrative Agency or Officer clothed with Administrative powers "must place his finger upon legislation

---

judicial in nature, made by the State Board of Agriculture, the State Banking Commissioner, the State Insurance Commissioner, the State Board of Health. The procedure on appeal is the same as in the case of poultry processors, *supra.*

Surely there are more important situations, than those listed above, where citizens of this State can be affected by orders, judicial or quasi-Highway Department and the State Board of Health. On the other hand, the listing of these Agencies is not to be understood as inferring there are not other Agencies whose orders can leave wide effect.

It is suggested that the Delaware State Bar Association and the Legislative Reference Bureau should consider the desirability of proposing to the General Assembly the enactment of a uniform statute relating to Court Review of all orders of Administrative Agencies and officials, which are judicial or quasi-judicial in nature, thus assuring a right of review of all such orders and providing for uniform procedure in the matter of all such court reviews. Such suggested uniform statute might consider application of the right of review to Accountants, Architects, Barbers, Chiropodists, Dentists, Nurses, Optometrists, Pawnbrokers, Physicians and Surgeons (including Osteopaths), Undertakers, State Planning Commission, and State Treasurer, in matters involving State Employees Pension Plan.

couched in express and non ambiguous language" to support the making of an order if an order is challenged; the power granted by the General Assembly "must be worded in terms so clear 'that no doubt can reasonably arise in the mind of the public' ".

Since our Supreme Court has three times determined, *Searles v. Darling, supra; Auditorium, Inc. v. Board of Adjustment, supra;* and *Board of Education v. Shockley, supra,* that this Court does not have the power of remand unless it is specifically granted to it by statute; and since our Supreme Court has twice ruled that the record sent up by the Administrative Agency is the record this Court should use in considering the appeal, see *Searles v. Darling, supra,* and *Auditorium, Inc. v. Board of Adjustment, supra,* the Board's motion to remand, see page 31, *supra,* is denied.

The decision of the Board is, therefore, reversed, and the cause remanded to the Board with instructions to issue the permit sought by the Appellant's application.

An order may be presented making effective the holding of this opinion.